

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---
## NO. PD-0243-23
---

**SHAWN EDWARD CRAWFORD, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS MENARD COUNTY
---

**WALKER, J., filed a dissenting opinion, in which NEWELL, J., joined.**

## <u>DISSENTING OPINION</u>

In *Delarosa*, we held that when the body of an indictment charges a facially complete offense, the body dictates what offense has been alleged despite any contradictory information elsewhere on the document such as the caption, despite any contrary intent by the attorney for the State to prosecute a different offense, and despite the evidence introduced at trial pursuant to that intent. *Delarosa v. State*, 677 S.W.3d 668, 677–79 (Tex. Crim. App. 2023). The indictment in *Delarosa* alleged sexual assault without the other person's consent, but the caption indicated that the State had intended to, and did, try the defendant for sexual assault of a child. *Id.* at 671. Because the

State presented evidence that the victim was a child, instead of evidence that the victim did not consent to sexual contact, the defendant's conviction was not supported by legally sufficient evidence. *Id.* at 680.

In this case, Appellant Shawn Edward Crawford was charged by indictment of two counts of intentionally, knowingly, and recklessly causing bodily injury to two complainants, and each count alleged that he "knew that the complainant was a **public servant**[.]" However, the indictment averred that the "**public servant[s]**" were each, "to wit: Menard County Deputy Sheriff, and the complainant was lawfully discharging an official duty, namely attempting to arrest Shawn Crawford." Additionally, the caption or heading indicated that the charges were for second degree felony assault of a peace officer or judge.

Nevertheless, because the body of the indictment completely alleged assault of a public servant, the explicit statutory language used by the indictment should control over the caption's information that assault of a peace officer was being charged, the description of the public servant ("Menard County Deputy Sheriff"), and the description of the official duty being discharged ("attempting to arrest"). None of those items override the statutory element alleged in the indictment that the complainant was a "public servant," not a peace officer. The indictment charged Appellant with assault of a public servant, a third degree felony, and his twelve-year sentence is beyond the statutory range.

The majority of this Court instead concludes that, regardless of the explicit statutory language employed by the indictment ("public servant"), the fact that the "public servant" is described as, "to wit: Menard County Deputy Sheriff" is enough to disregard the indictment's literal text and judicially rewrite the indictment's language. Focusing on only the factual averment that the

complainant was, "to wit: a . . . Deputy Sheriff," the majority declares that all "deputies" are "peace officers," even though reserve deputies exist which may or may not be peace officers. And the majority takes the next step to conclude that the "public servant" indictment was really a "peace officer" indictment, despite the fact that "peace officer" is literally not in the indictment's language.

To me, the indictment says what it says—Appellant "knew that the complainant was a **public servant**." We should affirm the judgment of the court of appeals, and we should remand the case to the trial court for a new punishment proceeding. Because this Court does not, I respectfully dissent.

## I — The Assault

Menard County Deputy Sheriff William Burl Hagler and Reserve Deputy Sheriff Michael Smith responded to a residential 911 call. Upon entering the home, they saw Appellant sitting on the floor in a corner. He appeared to be intoxicated and was rocking back and forth. The deputies, who were in uniform, announced that they were going to arrest him on outstanding warrants. Appellant became agitated and yelled that the warrants were fraudulent, that the charges had been dismissed, and that the FBI would arrest the deputies and the judge.

Undeterred, Deputy Hagler approached Appellant and attempted to handcuff him as he continued to argue about the warrants. After Deputy Hagler grabbed Appellant's arm and got one handcuff on, Appellant stood up and pushed Deputy Hagler across the room, causing the deputy to land on his back. Deputy Smith used his taser on Appellant, but the taser had no effect. Appellant then ran to the back of the house, chased by the deputies. Deputy Smith used his taser on Appellant again, but it still had no effect. Appellant threw a step ladder at Deputy Smith, which hit the deputy on the shoulder. Appellant ran outside through the back door. Deputy Hagler fired his own taser at Appellant's back, but it did not stop him.

Appellant ran around to the front of the house where his pickup truck was parked. Deputy Hagler followed, while Deputy Smith came out the front door of the house. They intercepted Appellant at his truck as he jumped in and tried to start it. The deputies tried to pull Appellant out, but he grabbed onto the steering wheel and kicked Deputy Hagler several times, including in the chest and groin. Deputy Hagler caught Appellant's foot and pulled him out of the truck. The deputies jumped on Appellant to hold him down, and Deputy Smith called for backup.

Backup came in the form of Reserve Deputy Michael Bubba Smith (Deputy Michael Smith's father) and Sheriff Buck Miller. Finding Appellant to be "exceptionally strong," to the extent that "something was not right," Deputy Hagler could not get Appellant's arms close enough together to get both in handcuffs. Sheriff Miller tried talking to Appellant, but Appellant insisted to the sheriff that the warrants were fraudulent. Appellant would not allow himself to be arrested. It took all four of Deputy Hagler, Deputy Smith, Deputy Michael Bubba Smith, and Sheriff Miller to get Appellant handcuffed and in leg shackles.

## II — The Indictment

Appellant was charged with two counts of assault for causing bodily injury to Deputy Hagler and Deputy Smith. The heading area of the indictment noted:

FELONY CHARGE   ASSAULT PEACE OFFICER/JUDGE
22.01(b-2) PENAL CODE
SECOND DEGREE FELONY
TWO COUNTS

The two counts alleged:

COUNT ONE

. . . SHAWN EDWARD CRAWFORD, hereafter styled the Defendant, heretofore
on or about April 10, 2021, did then and there intentionally, knowingly, and

recklessly cause bodily injury to Burl Hagler, hereafter styled the complainant, by shoving Burl Hagler, by kicking Burl Hagler in the chest, or by kicking Burl Hagler in the groin, and the defendant knew that the complainant was a public servant, to wit: Menard County Deputy Sheriff, and the complainant was lawfully discharging an official duty, namely attempting to arrest Shawn Crawford.

COUNT TWO

. . . SHAWN EDWARD CRAWFORD, hereafter styled the Defendant, heretofore on or about April 10, 2021, did then and there intentionally, knowingly, and recklessly cause bodily injury to Burl Hagler [sic], hereafter styled the complainant, by throwing a ladder at Michael Smith, and the defendant knew that the complainant was a public servant, to wit: Menard County Deputy Sheriff, and the complainant was lawfully discharging an official duty, namely attempting to arrest Shawn Crawford.

### III — Trial and Appeal

On the day of trial, the trial court granted the State's motion to dismiss Count Two, and the trial began with the trial court informing the jury panel, at the start of voir dire, that Appellant was charged "with the alleged offense of assault on a peace officer, an alleged second-degree felony." The State repeated this during voir dire ("The charge is assault on a peace officer."), and the trial court asked one of the prospective jurors whether she could consider the maximum punishment in a case of "assault on peace officer." Additionally, the State asked several members of the jury panel whether they could consider the full range of punishment, with that range being two to twenty years—the range for second degree felonies. *See* TEX. PENAL CODE Ann. 12.33(a).

After the jury was selected, the State read Count One of the indictment to the jury, but not any of the information in the heading or caption. Appellant pleaded not guilty, and then he objected to the characterization of the indictment as charging assault of a peace officer. Appellant's trial counsel noted the discrepancy between the language in the caption of the indictment ("peace officer") versus the language of the body of the indictment ("public servant"). The trial court replied

that "the caption at the top is not what governs. It's the verbiage in the indictment, and that's what I will focus on[.]" The trial court carried forward Appellant's objection for a later ruling.

The next morning, the trial court heard arguments from the parties. Appellant argued that the indictment alleged assault of a public servant and did not specifically allege that the complainant was a peace officer. The State responded that the indictment said the complainant was a deputy and was attempting to arrest Appellant. The trial court took the issue under advisement and continued the trial. At the charge conference, the trial court concluded that the indictment provided notice of second degree felony assault of a peace officer. However, the trial court followed by stating, "if there's a verdict of guilt in this case, it would be assault of a public servant, namely a Menard County Sheriff's Deputy which would be a peace officer." The trial court denied Appellant's earlier objection but wanted to hear if Appellant had further objections to the charge. Appellant's defense counsel reasserted their objection:

> to the characterization of this being an assault on a police officer charge. The title to the indictment that was handed down by the grand jury does, in fact, state assault on a peace officer, but, as we all know, title is not controlling nor is it indicative of anything. The body is the substance of the indictment. That is the crux of the charge that's levied against the Defendant, and that is what he's put on notice for. Not once in the body of that indictment is the word peace officer, those two words said. It doesn't invoke the punishment range for 22.01(b) dash 2. It invokes it for 22.01(b)(1). It's a public servant.

> There is an inference that's being drawn that because the words Menard County Sheriff's Deputy is articulated that that infers it's a peace officer and that is an inference that we are not capable of making. That is an inference saying that all Menard County Sheriff's Deputies are certified peace officers. That evidence is not in the record. That evidence has not been presented before the Court, nor has it been argued.

> This is an assault on a public servant charge, a third-degree felony. That's what we geared up for. That's what we believed it to be.

> Deputy Hagler may very well be a certified peace officer, but this statute was chosen between the two, public servant or peace officer. It shows public servant. Both are contained within 22.01. . . .
>
> Those two sections when read together show that you have to possibly choose or you can only choose one, and unless you say peace officer, you're stuck with public servant, a . . . third-degree felony, two to 10.

The State responded that a peace officer is a public servant, and the indictment alleged that Hagler was a Menard County Deputy Sheriff attempting to arrest Appellant. Additionally, the State argued that Appellant had "waived" the issue by bringing up the problem (the "defect") after the jury was sworn, instead of filing a motion to quash the indictment before trial.

Although the arguments did not sway the trial court to change its ruling, the trial court made changes to the jury charge by adding the words "peace officer" to the first sentence on the first page ("The defendant, Shawn Edward Crawford, is accused of Assault of a Public Servant, to-wit: a peace officer."). The trial court also added one of the definitions of peace officer into the charge's Definitions section ("'Peace officer' means . . . a peace officer under Article 2.12, Code of Criminal Procedure, which includes Sheriffs, their deputies, and those reserve deputies who hold a permanent peace officer license as required by law."). *See* TEX. CODE CRIM. PROC. Ann. art. 2.12(1). The charge's application paragraph told the jury that it had to find, among other elements, whether:

> 3. Burl Hagler was a public servant, to-wit: a Menard County Sheriff's Deputy; and
>
> 4. the defendant knew Burl Hagler was a public servant, to-wit: a Menard County Sheriff's Deputy[.]

The jury convicted Appellant on a jury verdict form stating that Appellant was "guilty of Assault of a Public Servant, to-wit: a Menard County Sheriff's Deputy, as charged in the indictment." After the case proceeded to punishment, the trial court's charge to the jury stated in the application paragraph:

You have found the defendant, Shawn Edward Crawford, guilty of Assault of a Public Servant, to-wit: a Menard County Sheriff's Deputy.

. . .

This offense is punishable by—

1. a term of imprisonment for no less than two years and no more than twenty years, or

2. a term of imprisonment for no less than two years and no more than twenty years and a fine of no more than $10,000.

The jury assessed a twelve-year sentence and a fine of $10,000 on a verdict form stating that Appellant was found guilty "of Assault of a Public Servant." In pronouncing the sentence, the trial court stated that "the offense is that of assault of a public servant, namely a Menard County Sheriff's Deputy who was a peace officer, and, accordingly, this is a second-degree felony."

On appeal, Appellant argued in two of his issues that the twelve-year sentence was illegal because the indictment charged him with assault of a public servant, a third degree felony punishable by a term of two to ten years.[1] *Crawford v. State*, 683 S.W.3d 793, 797 (Tex. App.—San Antonio 2023). The court of appeals agreed, reversed the sentence, and remanded to the trial court for a new punishment hearing. *Id.* at 801, 803.

We granted the State's petition for discretionary review, the first ground of which asked:

When determining what felony offense was charged, must everything on the face of the charging instrument the grand jury had before it be considered?

### IV — *Delarosa*: The Body of the Indictment Controls Over the Caption

The State's first ground for review essentially asks what parts of the indictment are to be

---

[1] Appellant's other issue on appeal was that the jury charge was erroneous. *Crawford*, 683 S.W.3d at 801.

considered in determining what offense has been charged. After the State's petition was granted and before oral arguments in this case, we answered that question in *Delarosa v. State*.

In that case, the body of the indictment charged Delarosa with three counts of sexual assault for non-consensual contact between his sexual organ and that of the pseudonymous complainant. *Delarosa*, 677 S.W.3d at 671. The indictment's caption, however, called the counts sexual assault of a child, and the State proceeded to try the case under that theory. *Id.* The State presented evidence showing that Delarosa and the complainant had sex almost weekly when she was between fourteen and seventeen years old. *Id.* at 672. Although she had written in a statement that "I am aware that I am a minor and unable to give consent," she testified that she thought she was in love with Delarosa during their relationship. *Id.* No one asked whether she had consented to the sexual contact. *Id.* Instead, her testimony suggested she willingly participated in sexual contact with Delarosa. *Id.* at 676. On a jury charge that authorized convictions for sexual assault of a child, and on jury verdict forms listing sexual assault of a child, Delarosa was found guilty. *Id.* at 672. "The judgment likewise stated that he was convicted of sexual assault of a child." *Id.* at 672–73.

On Delarosa's petition for discretionary review, we concluded that the evidence was insufficient to support his conviction. *Id.* at 676. The hypothetically correct jury charge, by which the sufficiency of the evidence must be measured, is that which is authorized by the indictment. *Id.* at 673 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

The indictment authorized a conviction for non-consensual sexual assault, despite the indication in the caption that the State had intended to charge Delarosa with sexual assault of a child. *Id.* at 677. Because the indictment charged non-consensual sexual assault, the State was bound to prove it though that was not the felony the State intended to charge. *Id.* The State failed in that

regard, because it proved sexual assault of a child instead.[2] *Id.* at 676.

*Delarosa* answers the State's first ground for review: when determining what offense is charged by a charging instrument, it is the accusatory language in the body of the charging instrument that must be considered. "Where an indictment facially charges a complete offense, the State is held to the offense charged in the indictment, regardless of whether the State intended to charge that offense." *Id.* at 677 (quoting *Thomason v. State*, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994)).

Here, the indictment alleged that Appellant "intentionally, knowingly, and recklessly cause[d] bodily injury to Burl Hagler, hereinafter styled the complainant, . . . and that [Appellant] **knew that the complainant was a public servant**, to wit: Menard County Deputy Sheriff, and the complainant was **lawfully discharging an official duty**." The assault of a public servant statute specifically states:

> (a)    A person commits an offense if the person:
>
> > (1)    intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> . . .
>
> (b)    An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
>
> > (1)    a person the actor **knows is a public servant while the public servant is lawfully discharging an official duty**, or in retaliation or on account of an exercise of official power or performance of an

---

[2] We further held in *Delarosa* that the evidence showing the complainant was a child could not itself prove a lack of consent. First, lack of consent is not shown solely by proof that the complainant was a child. *Id.* at 679–80. Second, although lack of consent could be shown by evidence showing mental defect, mental defect is not shown by proof that the complainant was a child. *Id.* at 680.

official duty as a public servant;

TEX. PENAL CODE § 22.01(a)(1), (b)(1) (emphasis added). The indictment charged Appellant with a facially complete offense of assault of a public servant. The indictment did not allege that Appellant knew that the complainant was a "peace officer."

### V — The Public Servant Is Described, "to-wit: Menard County Deputy Sheriff"

But there is a distinction between this case and *Delarosa*. The indictment in *Delarosa* never said in the actual charging language that the complainant was a child. The language of the indictment in *Delarosa* did not imply a sexual assault of a child case.[3] That information had to be found in the indictment's caption.

In this case, aside from the caption, information implicating assault of a peace officer is found within the factual averments of the indictment's charging language. Count One describes the public servant as "Menard County Deputy Sheriff." Is the factual averment—that the public servant was a sheriff's deputy—enough to say that the indictment really alleged assault of a peace officer, despite its explicit use of the statutory element "public servant" instead of "peace officer"? The majority answers that question, "Yes." This is a mistake, for the following reasons.

First, the indictment's charging language itself does not explain that a "Menard County Deputy Sheriff" is a peace officer. To the contrary, it only alleges that a "Menard County Deputy Sheriff" is a public servant. But if one were to go outside of the formal allegations of the indictment,

---

[3] The indictment in *Delarosa* alleged the complainant's identity using pseudonymous initials. *Delarosa*, 677 S.W.3d at 671. While this is a common practice in cases involving child complainants, it is not limited to such cases. Adult complainants can be alleged by initials, as well. *See, e.g.*, *Reed v. State*, 680 S.W.3d 620, 624 (Tex. Crim. App. 2023) (defendant indicted for sexual assault of adult complainant, "M.K."); *see also* TEX. CODE CRIM. PROC. Ann. arts. 58.102(a), 58.101(a)(1) (victim of a reportable offense may elect to use a pseudonym by completing a prescribed pseudonym form). The fact that initials are alleged does not raise the "child case" flag.

one might perceive "Menard County Deputy Sheriff" to be a peace officer. Indeed, under the definition of "peace officer" in effect at the time of Appellant's offense, "'Peace officer' [meant] a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure[.]" TEX. PENAL CODE § 1.07(a)(36) (West 2020). That statute, in turn, provided that peace officers include "sheriffs, their *deputies*, and those reserve *deputies* who hold a permanent peace officer license issued under Chapter 1701, Occupations Code[.]" TEX. CODE CRIM. PROC. art. 2.12(1) (West 2020) (emphasis added). Because peace officers include "deputies," the majority is satisfied that "public servant, to wit: . . . deputy" actually means "peace officer, to wit: . . . deputy."

But the Code of Criminal Procedure's definition of "peace officers" itself tells us that not all deputies are peace officers. The inclusion of "reserve deputies who hold a permanent peace officer license," rather than "reserve deputies" without such qualification, means: (1) there are reserve deputies that do not hold permanent peace officer licenses; and (2) those reserve deputies who do not hold permanent peace officer licenses are not peace officers.

The proposition that there are reserve deputies who are not peace officers is confirmed by the reserve deputy statute, subsection (b) of which stated at the time of the offense:

(b) A reserve deputy serves at the discretion of the sheriff and may be called into service if the sheriff considers it necessary to have additional officers to preserve the peace and enforce the law. The sheriff may authorize *a reserve deputy who is a peace officer as described by Article 2.12*, Code of Criminal Procedure, to carry a weapon or act as a peace officer at all times, regardless of whether the reserve deputy is engaged in the actual discharge of official duties, or may limit the authority of the reserve deputy to carry a weapon or act as a peace officer to only those times during which the reserve deputy is engaged in the actual discharge of official duties. *A reserve deputy who is not a peace officer as described by Article 2.12*, Code of Criminal Procedure, may act as a peace officer only during the actual discharge of official duties. *A reserve deputy, regardless of whether the reserve deputy is a peace officer as described by Article 2.12*, Code of Criminal Procedure, is not:

> (1) eligible for participation in any program provided by the county that is normally considered a financial benefit of full-time employment or for any pension fund created by statute for the benefit of full-time paid peace officers; or
>
> (2) exempt from Chapter 1702, Occupations Code.

TEX. LOC. GOV'T CODE § 85.004(b) (emphasis added) (West 2020). The statute provides different rules for reserve deputies who are peace officers and reserve deputies who are not peace officers. Plainly, then, reserve deputies are not necessarily peace officers. A "public servant, to wit: Menard County Deputy Sheriff" could potentially be a reserve deputy, and in turn could potentially not be a peace officer. There is no such question as to whether a "public servant, to wit: Menard County Deputy Sheriff" is a public servant.

The majority sets aside the existence of reserve deputies in a footnote because the indictment alleged "deputy," not "reserve deputy."[4] But Count Two, which was dismissed at the start of trial, alleged that Appellant "[threw] a ladder at Michael Smith, and the defendant knew that the complainant [Michael Smith] was a public servant, to wit: Menard County Deputy Sheriff[.]" While Count Two did not use the word "reserve," the evidence showed that Michael Smith was a reserve deputy.[5] The grand jury at least in this case handed down an indictment alleging "deputy," when "reserve deputy" could have been used.

Furthermore, and most ironically, the majority uses the absence of the statutory term "reserve" to close off the possibility that the "deputy" could be a "reserve deputy." Yet at the same time, the majority ignores the absence of the statutory term "peace officer" to close off the possibility

---

[4] Majority op. at 9 n.33.

[5] The evidence also showed that not only was Deputy Michael Smith a reserve deputy, he was also a "certified peace officer," as was his father, Reserve Deputy Michael Bubba Smith.

that the "deputy" is a "public servant."

And what of a prosecutor's discretion to choose which offense to charge? If the circumstances of the particular case warrant it, the prosecutor might decide to charge third degree assault of a public servant instead of a second degree felony, even though the public servant may be a peace officer. Must the prosecutor find an alternative job description for the complainant to avoid charging a higher offense than he finds appropriate for the case? But that question gives us the answer. The description of the public servant as a "Menard County Deputy Sheriff" is simply that: a description of the public servant.

Although the evidence at trial may later show that the public servant described as a deputy sheriff is also a peace officer, I would not hold that any indictment that explicitly alleges assault of a public servant that further describes the public servant as a "deputy sheriff" or "sheriff's deputy" has converted itself into an indictment alleging assault of a peace officer.

It may be a different case where the body of the indictment is ambiguous about which offense is being charged because it alleges both assault of a public servant and assault of a peace officer in a single count (i.e., "the defendant knew that complainant was a public servant and a peace officer, to wit: Menard County Deputy Sheriff"). Or the indictment fails to explicitly single out either statutory offense (i.e., "the defendant knew that the complainant was a Menard County Deputy Sheriff"). Where the indictment is facially defective and fails to allege a complete offense, the State may be correct that the entirety of the indictment, including the caption, should be considered to resolve any doubt as to which offense is being charged. But that question should wait for a case that raises it. That problem is not present here: Appellant's indictment alleged a facially complete offense of assault of a public servant.

## VI — Appellant's Sentence Is Outside the Range

"A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Mizell*, 119 S.W.3d at 806. Assault of a public servant is a third degree felony. TEX. PENAL CODE Ann. § 22.01(b)(1). Third degree felonies are punishable by a term of two to ten years, and a fine not to exceed $10,000. *Id.* § 12.34.

Appellant was sentenced to twelve years and assessed a fine of $10,000. Although the $10,000 fine is authorized for third degree felonies, his twelve-year sentence was not. The prison term of Appellant's sentence is outside the range of punishment, is unauthorized by law, and is therefore illegal. *Mizell*, 119 S.W.3d at 806.

## VII — Conclusion

The result of this case is dictated by *Delarosa*—when the body of the indictment alleges a facially complete offense, the body of the indictment dictates which offense has been charged, despite any contrary information found elsewhere such as in the caption or header and despite any intention to try the case as something else. In this case, the indictment explicitly used the statutory language "public servant," and it completely alleged that Appellant committed assault of a public servant, a third degree felony. The indictment's descriptions—that the public servant was a sheriff's deputy and that the official duty being discharged was attempting an arrest—are factual averments and not elements of the offense being charged.

Because Appellant's sentence was outside the range of punishment for third degree felonies, the court of appeals properly found Appellant's twelve-year sentence to be illegal. The judgment of the court of appeals should be affirmed, and the matter should be remanded to the trial court for a new punishment proceeding.

Because this Court chooses otherwise, I respectfully dissent.

Filed: March 26, 2025
Publish